Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:      516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN KOHLER,<br><br>                        Plaintiff,<br><br>            vs.<br><br>REALNETWORKS, INC., ROBERT GLASER, BRUCE A. JAFFE, CHRIS JONES, DAWN G. LEPORE, ERIK PRUSCH, MICHAEL B. SLADE, and TIM WAN,<br><br>                        Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Brian Kohler ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

<u>**SUMMARY OF THE ACTION**</u>

1.     Plaintiff brings this stockholder action against RealNetworks, Inc. ("RealNetworks" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to the Company's Chief Executive Officer

("CEO") Robert Glaser, through affiliate Greater Heights LLC ("Merger Sub" and collectively with Glaser, "Greater Heights") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a July 28, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of RealNetworks's common stock will be converted into the right to receive $0.73 in cash, without interest. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

3.      Thereafter, on September 19, 2022, RealNetworks filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement in an effort to Plaintiff, to vote in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the

information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for RealNetworks, provided by RealNetworks management to the Board and the Board's financial advisor Houlihan Lokey Capital, Inc. ("Houlihan") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Houlihan, if any, and provide to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.      Plaintiff is a citizen of Pennsylvania and, at all times relevant hereto, has been a RealNetworks stockholder.

8.      Defendant RealNetworks provides digital media software and services in the United States, Europe, and internationally. RealNetworks is incorporated in Delaware and has its principal place of business at 1501 First Avenue South, Suite 600, Seattle, Washington 98134. Shares of RealNetworks common stock are traded on the Nasdaq Stock Exchange under the symbol "RNWK".

9.      Defendant Robert Glaser ("Glaser") has been a Director of the Company at all relevant times. In addition, Glaser serves as the Company's Chief Executive Officer ("CEO") as well as the buyer in the Proposed Transaction, and thus is on both sides of the Proposed Transaction.

10.     Defendant Carlton Jaffe ("Jaffe") has been a director of the Company at all relevant times.

11.     Defendant Chris Jones ("Jones") has been a director of the Company at all relevant times.

12.     Defendant Dawn Lepore ("Lepore") has been a director of the Company at all relevant times.

13.     Defendant Erik Prusch ("Prusch") has been a director of the Company at all relevant times.

14.     Defendant Michael B. Slade ("Slade") has been a director of the Company at all relevant times.

15.     Defendant Tim Wan ("Wan") has been a director of the Company at all relevant times.

16.     Defendants identified in ¶¶ 9 - 15 are collectively referred to as the "Individual Defendants."

17.     Non-Party Merger Sub is a wholly owned affiliate of CEO Defendant Glaser created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

19.    Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

20.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

21.    RealNetworks, Inc. provides digital media software and services in the United States, Europe, and internationally. Its Consumer Media segment offers RealPlayer media player, a software that enables consumers to discover, play, download, manage, and edit digital video, stream audio and video, download and save photos and videos from the web, transfer and share content on social networks, and edit their own photo and video content. This segment also licenses its codec technology to electronic equipment, microchip, and integrated circuit manufacturers. The company's Mobile Services segment provides digital media services to mobile and online service providers as software as a service offerings, which include intercarrier messaging services; KONTXT, a text message management, anti-spam, and classification product; ringback tone that enables callers to hear subscriber-selected music or messages; business intelligence, and subscriber management and billing for the carriers; RealTimes, a photo and video sharing platform that offers to wireless carriers for integration in their hosted cloud solutions; and SAFR, a computer vision

platform. Its Games segment develops, publishes, and distributes casual games, including time-management, board, card, puzzle, word, and hidden-object games. It offers its casual games through mobile devices, digital downloads, and subscription play. RealNetworks, Inc. provides its products and services through direct and indirect channels comprising public relations, trade shows, events, and speaking opportunities; online channels, including social media; third party distribution partners; and third-party distribution channels, such as application storefronts, search engines, online portals, and content publishers. It offers its software and services to consumers, mobile carriers, device manufacturers, system integrators, and other businesses. The company was incorporated in 1994 and is headquartered in Seattle, Washington.

22.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the May 4, 2022 press release announcing its 2022 Q1 financial results, the Company highlighted  revenue of  $13.3 million and the launch of SAFR SCAN, the company's first integrated hardware-software product.

23.     Expressing optimism about the future success of the new product, CEO Defendant Glaser said, "We're very encouraged by the early feedback we're hearing from industry partners and experts and we're excited to begin commercial shipments later this quarter."

24.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by RealNetworks.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

25.     Despite this upward trajectory, the Individual Defendants have caused RealNetworks to enter into the Proposed Transaction without providing requisite information to RealNetworks stockholders such as Plaintiff.

*The Flawed Sales Process*

26.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

27.     Additionally, the Proposed Transaction is a foregone conclusion, with CEO Defendant Glaser owning 38.5% of the Company's stock, holding a managerial position in the Company, and dictating many of the terms of the deal to the Company's Board without significant negotiation. Notably, the Preliminary Proxy Statement fails to include a majority of the minority provision.

28.     Further, the sales process was further abbreviated by the fact that no market check was conducted prior to the execution of the merger agreement, preventing the Company from seeking out potential strategic alternatives and competing offers.

29.     Additionally, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Parent, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

30.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

31.     On July 28, 2022, RealNetworks and Greater Heights issued a joint press release

announcing the Proposed Transaction.  The press release stated, in relevant part:

> **SEATTLE, July 28, 2022 /PRNewswire/** -- RealNetworks, Inc. (Nasdaq: RNWK)
> announced today it has signed a definitive agreement with the Company's founder,
> Chairman and CEO, Robert D. Glaser, pursuant to which the Company will merge
> with and into Greater Heights LLC, an affiliate of Mr. Glaser, and each outstanding
> share of common stock of the Company will be converted into the right to receive
> cash consideration of $0.73 per share. Mr. Glaser, together with his affiliates,
> currently owns approximately 39% of the outstanding shares of RealNetworks's
> stock.  The merger consideration represents a 55% premium to the Company's
> closing stock price on the last trading day prior to announcement of Mr. Glaser's
> proposal to acquire the Company.
>
> The Merger Agreement and the merger has been approved by the Company's Board
> of Directors, based on the recommendation of a Special Committee of the Board
> consisting exclusively of independent directors. The Company's shareholders will
> be asked to vote upon the adoption of the Merger Agreement and approval of the
> merger at a shareholders meeting called for such purpose on a date to be announced.
> The closing of the transaction is conditioned upon the approval of a majority of the
> shares not owned by Mr. Glaser and his affiliates.  The parties anticipate the
> transaction will close in the fourth quarter.
>
> "I founded RealNetworks 28 years ago because I believed that the Internet
> represented a once-in-a-generation transformational opportunity for digital media,"
> said Glaser.  "I believe that Machine Learning-based Artificial Intelligence
> represents a similar transformational opportunity today, albeit one that will also
> take time and resources to fully realize.  I'm happy that the RealNetworks Board
> and I could reach agreement on a path to pursue that transformation with focus,
> efficiency, and speed by turning Real back into a private company, and in a way
> that is fair to all shareholders."
>
> Bruce Jaffe, the Chairman of the Special Committee, said, "The Special Committee
> is very pleased to have completed a thorough process that has resulted in a
> transaction with Rob that we believe provides immediate liquidity and compelling
> value to the public shareholders of RealNetworks without the risk of future
> performance and securing working capital in this economic climate."
>
> Houlihan Lokey is acting as independent financial advisor and King & Spalding
> LLP is acting as independent legal counsel to the Special Committee in connection
> with the transaction.  Wilson Sonsini Goodrich & Rosati P. C. is acting as legal
> counsel to the Company.

Imperial Capital is acting as financial advisor and DLA Piper LLP (US) is acting as legal counsel to Mr. Glaser.

***Potential Conflicts of Interest***

32.     The breakdown of the benefits of the deal indicate that RealNetworks insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of RealNetworks.

33.     Additionally, Company insiders, currently own large amounts of Company stock, company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.   The Preliminary Proxy Statement accounts for these awards as follows:

| Name | Shares of RealNetworks Common Stock (#) | Shares of RealNetworks Common Stock ($) | RealNetworks Options (#) | RealNetworks Options ($) | RealNetworks RSUs (#) | RealNetworks RSUs ($) | Total ($) |
|---|---|---|---|---|---|---|---|
| Robert Glaser | 17,286,793 | 12,619,359 | 1,719,581 | — | — | — | 12,619,359 |
| Michael Parham | 161,323 | 117,766 | 641,098 | — | 37,500 | 27,375 | 145,141 |
| Brian McClain | — | — | — | — | — | — | — |
| Christine Chambers | N/A | N/A | — | — | — | — | — |
| Michael Ensing | 535,005 | 390,554 | — | — | 200,000 | 146,000 | 536,554 |
| Judd Lee | N/A | N/A | — | — | — | — | — |
| Bruce Jaffe | 22,297 | 16,277 | 120,000 | — | 182,280 | 133,064 | 149,341 |
| Christopher Jones | 140,919 | 102,871 | 94,596 | — | — | — | 102,871 |
| Dawn Lepore | 32,107 | 23,438 | 90,000 | — | 127,401 | 93,003 | 116,441 |
| Erik Prusch | 104,138 | 76,021 | 43,750 | — | — | — | 76,021 |
| Michael Slade | 208,402 | 152,133 | 140,685 | — | — | — | 152,133 |
| Tim Wan | 104,138 | 76,021 | 43,750 | — | — | — | 76,021 |

34.     In addition, certain employment agreements with certain Company executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant several directors

or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

**Golden Parachute Compensation**

| Name | Cash ($) | Equity ($) | Perquisites / Benefits ($) | Total ($) |
|---|---|---|---|---|
| Robert Glaser | 2,625,000 | — | 31,310 | 2,656,310 |
| Michael Parham | 1,028,125 | 27,375 | 53,163 | 1,108,663 |
| Christine Chambers | — | — | — | — |
| Michael Ensing | — | 146,000 | — | 146,000 |

35.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

36.     Thus, while the Proposed Transaction is not in the best interests of RealNetworks, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

37.     On September 19, 2022, the RealNetworks Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

38.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

    a.   Adequate disclosure as to the extent of influence CEO Defendant Glaser had on the completion of the Proposed Transaction;

    b.   Adequate disclosure as to why no majority of the minority provision was included in the Proposed Transaction;

    c.   Adequate disclosure as to why no pre-deal market check was conducted for potentially interested third parties and strategic alternatives;

    d.   Whether the confidentiality agreements entered into by the Company with Parent differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

    e.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including The Consortium, would fall away; and

    f.   Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning RealNetworks's Financial Projections*

39.     The Preliminary Proxy Statement fails to provide material information concerning financial projections for RealNetworks provided by RealNetworks management to the Board and Houlihan and relied upon by Houlihan in its analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

40.     Notably the Preliminary Proxy Statement reveals that as part of its analyses, Houlihan reviewed, "certain information relating to the historical, current and future operations, financial condition and prospects of the Company, including financial projections prepared by or discussed with the management of the Company" prepared by Company management.

41.     Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that RealNetworks management provided to the Board, Houlihan, and Houlihan.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

42.     With regard to the *Projected Financial Information* prepared by RealNetworks, the Preliminary Proxy Statement fails to disclose material line items for important metrics.

        a.  A definition for EBITDA, as well as the underlying inputs, metrics, and
            assumptions used to calculate the metric.

43.     The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

44. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

45. Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Houlihan's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Houlihan*

46. In the Preliminary Proxy Statement, Houlihan describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

47. With respect to the *Selected Companies Analysis*, the Preliminary Proxy Statement fails to disclose the following:

 a. The specific metrics for each company compared;

 b. The inputs, metrics, and assumptions used to determine a multiple range of 0.68x to 1.35x LTM revenue; and

 c. The inputs, metrics, and assumptions used to determine a multiple range of 0.69x to 1.34x CY 2022E revenue.

48.     With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.  The terminal values calculated;

      b.  The inputs, metrics, and assumptions used to determine a range of terminal value revenue multiples of 0.75x to 1.50x; and

      c.  The multiples, inputs, metrics and assumptions used to determine discount rates ranging from 15.0% to 20.0%.

49.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

50.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public RealNetworks stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

51.     Plaintiff repeats all previous allegations as if set forth in full herein.

52.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

53.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

54.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

55.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

56.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

57.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

58.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

59.     Plaintiff repeats all previous allegations as if set forth in full herein.

60.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

61.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual

Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

62.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of RealNetworks's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

63.     The Individual Defendants acted as controlling persons of RealNetworks within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause RealNetworks to engage in the wrongful conduct complained of herein. The Individual Defendants controlled RealNetworks and all of its employees. As alleged above, RealNetworks is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 30, 2022        **BRODSKY & SMITH**

By:  */s/ Evan J. Smith*
           Evan J. Smith
           240 Mineola Boulevard
           Mineola, NY  11501
           Phone:  (516) 741-4977
           Facsimile (561) 741-0626

           *Counsel for Plaintiff*